NEWMAN, Circuit Judge,
concurring in part, dissenting in part.
Although the decision of the Court of Federal Claims is subject to controversy, for KBR provided substantial evidence that its arrangements with subcontractors to feed and accommodate a wartime Army were reasonable in view of the “constantly changing demands” of the Army’s activities in the Iraq war, the Court of Federal Claims made a full and careful analysis.[1] The trial court acknowledged the “fluctuating projections” and “unforeseeability” of the needs and facilities demanded of KBR, and there was no suggestion that KBR profited unduly from the erratic demands of the escalating war in Iraq. I concur in the conclusion that the trial court’s analysis is supportable.
However, unlike the panel majority, I would also affirm the trial court’s ruling that the actions of KBR’s employees Hall and Holmes who accepted favors totaling *1373 $88,000 from a sub-contractor should not invoke the double penalty provision against KBR. There was no evidence that KBR “received a benefit” from these bribes to its employees, as the majority holds, maj. op. at 1870, or had knowledge of the kickbacks at the time. Thus although I affirm the judgment of the Court of Federal Claims that KBR is strictly liable to pay the government this sum under 41 U.S.C. § 55(a)(2), I would not impose the doubled penalty under § 55(a)(1). To this extent, I respectfully dissent.
Discussion
As defined in the Anti-Kickback Act (AKA):
The term “kickback” means any money, fee, commission, credit, gift, gratuity, thing of value, or compensation of any kind that is provided to a prime contractor, prime contractor employee, subcontractor, or subcontractor employee to •improperly obtain or reward favorable treatment in connection with a prime contract or a subcontract relating to a prime contract.
41 U.S.C. § 52(2).[2] The AKA provides for two levels of liability of employers whose employees accept bribes or favors of any kind. Under 41 U.S.C. § 55(a)(2), the employer is strictly liable to the United States for the specific value of any kickback received by an employee. Under § 55(a)(1), the employer is subject to an additional “civil penalty,” for a total liability of twice the amount of each kickback, and a cap of $10,000 (now $11,000) per kickback event, if the employer had knowledge of the kickback.
Both liability levels arise under the “doctrine of respondeat superior,” 132 Cong. Rec. S16, 311 (daily ed. Oct. 15, 1986) (statement of Sen. Carl Levin), whereby under general principles of agency law, principals are charged with liability of their agents’ malfeasance “except where the agent is acting adversely to the principal.” Restatement (Second) of Agency § 275 (1958). However, a “principal is not affected by the knowledge of an agent in a transaction in which the agent secretly is acting adversely to the principal and entirely for his own or another’s purposes.” Restatement (Second) of Agency § 282 (1958).
According to the majority’s ruling, KBR as employer is charged with imputed knowledge of the. kickbacks, and thus of liability for the double civil penalty, although it appears undisputed that KBR did not have actual knowledge. The majority states that KBR “received a benefit” from the kickbacks because Tamimi performed DFAC services under its existing contractual obligations. Maj. op. 1370. This ruling erases the distinction between the two statutory levels of liability in the AKA. An existing contractual relationship is a prerequisite for liability under the AKA definition of “kickback.” See 41 U.S.C. § 52(2), supra, (defining kickback as payments etc. “in connection with a prime contract or a subcontract”); see also Black’s Law Dictionary (9th ed.2009) (a “kickback” is “A return of a portion of a monetary sum received.... ” (emphasis added)). The majority’s reasoning fails to recognize this inconsistency.
KBR acquiesced in its statutory strict liability under § 55(a)(2), for the $38,000 that the subcontractor paid to KBR employees Hall and Holmes. KBR Reply Br. 6. The Court of Federal Claims held KBR not liable under § 55(a)(1) for the doubled penalty because KBR’s management had *1374 no knowledge of these illicit payments and KBR did not benefit from them; this is the ruling that the panel majority reverses.
There was no evidence that the bribes paid to Hall and Holmes were known to KBR or were of benefit to KBR. Hall and Holmes kept the entire payments for themselves, as “party money” and for sham business ventures. 103 Fed.Cl. at 721-22, 773-74. Although the government suggests that the bribe-paying subcontractor may have procured its sub-contracts at inflated prices, this did not benefit KBR. No benefit to KBR has been shown.
My colleagues have removed the distinction between the two subsections of § 55(a), by imposing the double penalty provision of § 55(a)(1) in circumstances that invoke only the single strict liability provision of § 55(a)(2). The trial court’s ultimate and subsidiary factual findings on this issue are not clearly erroneous, and the Court of Federal Claims correctly limited KBR’s liability to § 55(a)(1). From my colleagues’ reversal of the Court of Federal Claims’ ruling on this issue, I respectfully dissent.

. Kellogg Brown & Root Servs., Inc. v. United States, 103 Fed.Cl. 714, 773 (Fed.Cl.2012).

. Congress re-codified the AKA without substantive change, placing it at 41 U.S.C. §§ 8701-07.